UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARIEL BARKAI,

                    Plaintiff,

               -against-

PATRICIA S. RUPPERT, COMMISSIONER,
ROCKLAND COUNTY DEPARTMENT OF
HEALTH; LAURA CARBONNE, ROCKLAND
COUNTY MEDICAL EXAMINER; AND OTHER
JOHN DOE ROCKLAND COUNTY
EMPLOYEES,

                  Defendants.

21-CV-3695 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

       Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. § 1983, alleging that Defendants violated his rights. By order dated July 23, 2021, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* (IFP). The Court dismisses the complaint for the reasons set forth below

## STANDARD OF REVIEW

       The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

       While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that, under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff brings this action against Patricia S. Ruppert, the Commissioner of the Rockland County Department of Health (DOH); Laura Carbonne, the Rockland County Medical Examiner (ME); and other John Doe employees of Rockland County. Plaintiff alleges that Defendants violated his rights to due process and equal protection under the Fourteenth Amendment and state law by disclosing private medical information and failing to investigate the disclosure.

The following allegations are taken from the complaint. On January 27, 2020, while Plaintiff was present, his mother died in the Montefiore Nyack Hospital after a nurse gave her "50 mcg of an ultra fast acting beta blocker called Esmolol that immediately put her into a

cardiac event that ended her life." (ECF 2, at 9 ¶ 1.) After his mother's funeral in Israel, Plaintiff

had a conversation with a cardiologist friend there, who pointed out that Esmolol "is known to

cause death when used in off label applications to people in complex clinical states." (*Id*. at ¶ 3.)

Plaintiff immediately reached out to the ME's Office to request an inquest on his mother's death.

  Plaintiff spoke to a John Doe defendant in the ME's Office who was "unhelpful" and

"threatening," informing Plaintiff that he would not allow him to speak to ME Carbonne and

indicating that Plaintiff was "bothering him." (*Id*. at ¶ 4.) Plaintiff became extremely upset, and

informed the John Doe that when he returned to New York he would come to the ME's Office to

"demand that his evidence be made part of the record." (*Id*. at ¶ 5.) Plaintiff also told the John

Doe that he "was completely shocked and disgusted by his lack of empathy" and that he would

complain of John Doe's behavior to John Doe's supervisor. (*Id*.)

  On or about August 7, 2020, after Plaintiff returned to New York, he once again

attempted to contact ME Carbonne to discuss with her the cause of his mother's death. He called

the ME's Office and explicitly stated to the John Doe who answered that the matter was private

because he "did not want the hospital to catch wind of this lest they alter medical records in

anticipation of potential civil litigation." (*Id*. at ¶ 7.) But ME Carbonne did not return Plaintiff's

call. Instead, Plaintiff was contacted by a Rockland County Deputy Sheriff who threatened to

have him arrested if he went to the ME's Office to speak to ME Carbonne.

  Plaintiff immediately drove to the Sheriff's Department in New City and spoke to Sheriff

Falco about how upset he was that he was not being "offered assistance and an open ear" after he

witnessed a possible crime, but instead was "receiving threats of arrest for speaking on [his] dead

mothers behalf" in accordance with New York law, including the state's Patients Bills of Rights.

(*Id*. at ¶ 8.) Sheriff Falco sympathized with Plaintiff, and told Plaintiff that he had spoken to ME

Carbonne, and she had told him that she or someone from her office would reach out to Plaintiff in the next few weeks.

Plaintiff waited for ME Carbonne or her office to reach out to him. When the ME's Office eventually reached out to him, he sent a couple of emails from Israel, where he had returned, to ME Carbonne through her assistant, Ms. Morelli.

Plaintiff eventually received an email with an attached letter from Ms. Morelli stating that ME Carbonne "essentially agreed with [him]" that Esmolol caused his mother's death. (*Id*. at ¶ 11.) The letter stated that ME Carbonne was changing the cause of his late mother's death to reflect that it was directly caused by Esmolol. Plaintiff sent a few more inquiries to ME Carbonne, but on March 17, 2020, Ms. Morelli "apprised [him] of the pandemic" and asked him to let them "focus on the pandemic." (*Id*. at ¶12.) Plaintiff immediately ceased all communications with the ME's Office

At an unspecified date, Plaintiff was arrested and charged with criminal harassment in the second degree for "complaining lawfully" to Montefiore Nyack Hospital about his mother's death.[1] (*Id*. at ¶14.) After the case was "summarily dismissed at arraignment," Plaintiff filed a Freedom of Information Law request for information from the Rockland County District Attorney's Office related to the criminal case. (*Id*. at ¶ 15.) Plaintiff obtained a recording of a phone call from Jim Hastings, the head of security at Montefiore Nyack Hospital, to the police. Hastings informed the police that Plaintiff was "terrorizing the hospital," and also stated that "[a]pparently [Plaintiff] has been terrorizing the medical examiners [sic] office." (*Id*.) It then

---

[1] Plaintiff has filed another action in this court against the Rockland County District Attorney and his office, members of the Clarkstown Police Department, and the Clarkstown Town Supervisor for arresting him and involuntarily admitting him to a psychiatric hospital. *See Barkai v. Nuendorf*, No. 21-CV-4060 (KMK) (S.D.N.Y. filed May 4, 2021).

"struck" Plaintiff that his private complaint to the ME's office must have been conveyed to the hospital and Hastings, a private corporation and individual, although he had told "John Doe that [he] was coming forth to him privately for fear that a leak of this information could compromise medical records which were still in the hospitals [sic] possession," which he was unable to access from Israel. (*Id.*) John Doe's relaying of the information to the hospital and Hastings was "a clear and unequivocal violation of [Plaintiff's] right, request and expectation of privacy in matters related to medical issues codified in multiple state and federal laws." (*Id.*)

Plaintiff immediately contacted the ME's Office and spoke to Ms. Morelli about what he had learned. Realizing that "she was the wrong address [sic]," he ended the call, and instead filed a complaint with the New York State Department of Health and a notice of claim with the Rockland County Attorney. (*Id.* at ¶ 17.) In the filings, Plaintiff sought an investigation on the "breach" of his private communication with the ME's office to a private company, and he threatened to file an action in federal court regarding the matter. (*Id.*)

On March 29, 2021, the New York State Department of Health referred him to the Rockland County Department of Health (Rockland County DOH) because the ME's office was not a state agency. On April 2, 2021, Plaintiff contacted the Rockland County DOH and left a message for Commissioner Ruppert. He also discussed the vaccination process with the representative who answered the phone and took the message. Soon after, Plaintiff received a "denial letter" dated April 2, 2021, from the Rockland County Attorney. (*Id.* at ¶ 20.) The letter denied his request for an investigation, and directed him to "cease and desist" from contacting the ME's Office or the COVID-19 call center immediately. (*Id.* at 29.) The letter further stated that Plaintiff's "repeated calls and communications are disruptive and impeding the operation of

the Medical Examiner's Office and the COVID-19 call center, particularly now during the

COVID-19 pandemic, when resources are stretched." (*Id.*)

Plaintiff brings this action asserting that Commissioner Ruppert, ME Carbonne, and other

John Does employed by Rockland County violated his rights to due process and equal protection

by leaking private medical information and by not treating him fairly when he sought an

investigation of the matter. Plaintiff seeks money damages and an order compelling a full

investigation of the alleged leak.

## DISCUSSION

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any

statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be

subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C.

§ 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating

federal rights elsewhere conferred by those parts of the United States Constitution and federal

statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *accord Patterson v.*

*Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under section 1983, a plaintiff

must allege both that: (1) a right secured by the Constitution or laws of the United States was

violated, and (2) the right was violated by a person acting under the color of state law, or a "state

actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

Plaintiff contends that Defendants violated his rights to due process and equal protection

under the Fourteenth Amendment by (1) disclosing to Montefiore Nyack Hospital personal

medical information about his mother's death and about his request for an inquest; and (2) failing

to investigate the disclosure when he complained to the Rockland DOH and the Rockland

County Attorney.

The Court concludes that Plaintiff has failed to allege any facts upon which a reasonable fact finder could determine that Plaintiff suffered a violation of his constitutional rights.

## A.     Disclosure of Medical Information

Under the Fourteenth Amendment's Due Process Clause, individuals are protected from "'arbitrary [governmental] intrusions into their medical records,' and from the 'disclosure of [related] personal matters.'" *Talarico v. Port Auth. of N.Y. and N.J.*, 367 F. Supp. 3d 161, 169 (S.D.N.Y. 2019) (quoting *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018); *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994)). But this right to  privacy is "not absolute." *Hancock*, 882 F.3d at 65. "A constitutional violation only occurs when the individual's interest in privacy outweighs the government's interest in breaching it." *Id*. Where the alleged privacy intrusion "does not involve penological interests," a court must ask "whether the action was so 'arbitrary' as to 'shock the conscience.'" *Id.* at 66 (quoting *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005)). Government conduct that "'shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken.'" *Id*. (*quoting O'Connor*, 426 F.3d at 203). "'[O]nly the most egregious official conduct' shocks our consciences – but how egregious conduct has to be in order to be shocking depends on a context-specific balancing." *Id*. (*quoting O'Connor*, 426 F.3d at 203). "Malicious invasions of privacy are constitutionally unacceptable even in the face of weak individual privacy interests," but "[s]tronger privacy interests will be required to hold executive actors liable who acted with less culpable mental states." *Id.* (internal quotation marks and citations omitted).

In determining the strength of an individual's privacy interest in his medical information, courts will "proceed on a case-by-case basis . . . examin[ing] all relevant factors." *Id.* at 66-67 (citation omitted). Although the "strength of this interest requires taking into account the seriousness of the condition and stigma associated with it[,] . . . other factors may also be

relevant." *Id*. at 67. "[I]dentifying the strength of the individual interest in privacy never ends the

analysis." *Id.* at 68. Instead, a court must also examine the government's "interest in breaching

that privacy." *Id.*

### 1.  Plaintiff fails to allege a deprivation of a privacy interest

Here, Plaintiff fails to allege that he was deprived of a constitutionally protected privacy

interest. His allegations do not suggest that the ME's Office revealed any information to

Montefiore Nyack Hospital, let alone information of a deeply personal nature that warranted

confidentiality. Rather, he merely alleges that he requested that the ME's Office keep his

communications private for fear that the hospital would alter medical records, he later learned

that Hastings, the hospital's head of security, informed the police that he was "terrorizing the

medical examiners [sic] office," and from that he concluded that the ME's Office must have told

the hospital about his private complaint. (ECF 2, at 11¶ 15.) But even if the Court assumes, as

Plaintiff does, that the ME's Office disclosed Plaintiff's conversation and request for an inquest

to the hospital, such information is not medical or "excruciatingly private and intimate in nature"

such that it would give rise to a strong privacy interest that is entitled to constitutional protection.

*See Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 64 (2d Cir. 2011) (holding that

fibromyalgia, although a serious condition, was not a fatal disease that " carr[ies] with it the sort

of opprobrium that confers upon those who suffer from it a constitutional right of privacy as to

that medical condition," and that revealing the condition of fibromyalgia would not "expose a

person . . . to discrimination and intolerance," *id.* at 67); *see also Hancock*, 882 F.3d at 67

("[S]ubstantive due process categorically . . . protects privacy in certain types of personal

information – medical information."); *Barry v. New York*, 712 F.2d 1554, 1562 (2d Cir. 1983)

("We do not think . . . the release of information that is not 'highly personal' rises to the level of

a constitutional violation.") (citation omitted).

Further, even if the Court accepts Plaintiff's characterization of his communication to the ME's Office as private medical information, such that its disclosure would trigger a privacy interest, he fails to allege any conduct constituting an unlawful intrusion into that privacy interest. The only medical information possibly at issue would be that of Plaintiff's mother, in which Plaintiff claims a privacy interest. Assuming that Plaintiff has a privacy interest in his deceased mother's medical information,[2] any leaking of that information to the hospital where she was treated and died would not be an intrusion into any privacy interest Plaintiff may have. The hospital was presumably aware of Plaintiff's mother's medical issues and the circumstances of her death, and any alleged disclosure by the ME's Office would not rise to the level of an "arbitrary" and "egregious" intrusion that "shocks the conscience," thus requiring constitutional protection. *See Hancock*, 882 F.3d at 66. Nor does Plaintiff allege any facts suggesting that anyone from the ME's Office acted with a sufficiently culpable state of mind in making the alleged disclosure. The Court therefore dismisses Plaintiff's claims concerning the alleged disclosure of medical information for failure to state a claim on which relief may be granted.[3] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[2] Plaintiff may have a right of privacy in his deceased mother's medical information. *See Prescott v. Cty. of Stanislaus*, 2011 WL 2119036, at *1, fn. 2 (E.D. Cal. May 23, 2011) (noting that a patient has a right of privacy in the confidentiality of his medical records even after his death and these rights may be asserted by the decedent's survivors); *see also Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 170 (2004) (finding that under common law, the right to "personal privacy" included the "surviving family members' right to personal privacy with respect to their close relative's death-scene images"); *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1153-55 (9th Cir. 2012) (holding that parents' right of privacy in the autopsy images of their child is protected by substantive due process doctrine); *Wessler v. DOJ*, 381 F. Supp. 3d 253, 259 (S.D.N.Y. 2019) (recognizing deceased federal pretrial detainees' family members' privacy interest in the medical and autopsy records in the context of the Freedom of Information Act (FOIA)). *But see U.S. v. Amalgamated Life Ins. Co.*, 534 F. Supp. 676, 679 (S.D.N.Y. 1982) (constitutional right to privacy terminates upon death and does not descend to heirs of deceased).

[3] Plaintiff also does not state a claim under the Health Insurance Portability and Accountability Act (HIPAA), which generally provides for the confidentiality of individually

### 2.  Plaintiff does not allege ME Carbonne's personal involvement

Moreover, Plaintiff alleges no facts suggesting that ME Carbonne should be held liable for any alleged violation. In a section 1983 action, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep' t of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). A defendant may not be held liable under section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff does not allege any facts showing how ME Carbonne was personally involved in the events underlying his claims. He appears to seek to hold her liable simply because she is the supervisor of the ME's Office. But that is not sufficient to state a claim under section 1983. Plaintiff's claims against ME Carbonne must be dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

---

identifiable health information, *see* 42 U.S.C. §§ 1320d-1 to d-7, and authorizes the Secretary of Health and Human Services to make final regulations and bring enforcement actions, *see* 42 U.S.C. § 300gg-22.  HIPAA does not provide a private right of action. *See Meadows v. United Services, Inc.*, 963 F.3d 240, 244 (2d Cir. 2020).

**B.      Failure to Investigate the Disclosure**

    **1.  Plaintiff fails to state a due process claim**

The United States Constitution does not provide individuals with an affirmative right to

an investigation of their claims by the government that is protected by the Due Process Clause of

the Fourteenth Amendment. See *DeShaney v. Winnebago Soc. Servs.*, 489 U.S. 189, 196 (1989)

("[T]he Due Process Clause generally confers no affirmative right to governmental aid, even

where such aid may be necessary to secure life, liberty, or property interests of which the

government itself may not deprive the individual."). "Courts within the Second Circuit have

determined that there is no constitutional right to an investigation by government officials."

*Bernstein v. New York*, 591 F. Supp. 2d 448, 460, 465 (S.D.N.Y. 2008) (collecting cases)

(alterations, internal quotation marks, and citations omitted); *see also Adamczyk v. Annucci*, No.

16-CV-239 (LJV), 2019 WL 6123746, at *2 (W.D.N.Y. Nov. 19, 2019) (dismissing due process

claim premised on the Commissioner of the New York State Department of Corrections and

Community Supervision's alleged failure to investigate plaintiff's termination because "there is

no constitutional right to an investigation by government officials"); *Burroughs v. Mitchell*, 325

F. Supp. 3d 249, 284 (N.D.N.Y. 2018) (dismissing "constitutional claim against defendants for

failing to report and/or investigate his complaints"); *Troy v. City of N.Y.*, ECF 1:13-CV-5082, 53,

2014 WL 4804479, at *6 (S.D.N.Y. Sept. 25, 2014) ("It is well established that there is no

constitutional right to an investigation by government officials.") (alterations and citations

omitted).

The Second Circuit has recognized two exceptions to this general rule that the State has

no duty to investigate or protect individuals: first, "when the State takes a person into its custody

and holds him there against his will, the Constitution imposes upon it a corresponding duty to

assume some responsibility for his safety and general well-being," *DeShaney*, 489 U.S. at 200;

and second, the government may assume some obligation when it affirmatively creates or

increases the danger, *see Dwares v. City of N.Y.*, 985 F.2d 94, 98-99 (2d Cir. 1993).

Plaintiff provides no facts suggesting that his claims fall under either of the narrow

exceptions to the general rule that there is no substantive due process right to an investigation. In

addition, he alleges no facts suggesting that Commissioner Ruppert was personally involved in

the events underlying his claims. Because Plaintiff cannot show that Commissioner Ruppert or

anyone from the Rockland County DOH violated his due process rights, Plaintiff's claims

concerning the failure to investigate the allegedly unlawful disclosure are dismissed for failure to

state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**2.   Plaintiff fails to state an equal protection claim**

Similarly, Plaintiff also fails to allege facts giving rise to an equal protection claim with

respect to the failure to investigate his complaints. The Equal Protection Clause of the Fourteenth

Amendment essentially prohibits the disparate treatment of similarly situated individuals. *See*

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Hart v. Westchester Cty.*

*Dep't of Soc. Servs.*, 160 F. Supp. 2d 570, 578 (S.D.N.Y. 2001). Although the Constitution does

not provide an affirmative right to an investigation, "'it does prohibit the government from

treating individuals unequally when determining which claims to investigate.'" *Lopez v. City of*

*N.Y.*, 186 F. Supp. 3d 304, 312 (S.D.N.Y. 2016) (quoting *Troy*, 2014 WL 4804479, at *10 n.3 ().

Accordingly, a plaintiff does have a right to a non-discriminatory investigation that complies

with the Fourteenth Amendment. *See McGrath v. Dominican College of Blauvelt, N.Y.*, 672 F.

Supp. 2d 477, 490 (S.D.N.Y. 2009) (citations omitted).

Plaintiff fails to assert any facts suggesting that the Rockland County DOH discriminated

against him by failing to investigate his claims in violation of the Fourteenth Amendment's

Equal Protection Clause. He does not allege that he was subjected to selective treatment in

comparison to similarly situated individuals and that "the selective treatment was motivated by

an intention to discriminate on the basis of impermissible considerations, such as race or religion,

to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to

injure the person." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (internal citation

and quotation marks omitted); *see Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) ("To

prove an equal protection violation, claimants must prove purposeful discrimination directed at

an identifiable or suspect class.") (citations omitted). Because Plaintiff fails to assert any facts

suggesting that the Rockland County DOH, its Commissioner, or any other person acted with an

improper or discriminatory motive because of his protected characteristic, he fails to state an

equal protection claim under the Fourteenth Amendment. The Court dismisses Plaintiff's equal

protection claim for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.      Leave to Amend Denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to

cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*,

657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court

declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii).

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on

the docket.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

 Dated:   August 16, 2021
          New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                     Chief United States District Judge